Judgment rendered May 22, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,696-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

TRAVIS L. ADAMS                             Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 366,297

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

VICTORIA T. WASHINGTON
JOHN C. PHILLIPS
SAMUEL S. CRICHTON
TOMMY JAN JOHNSON
Assistant District Attorneys

* * * * *

Before THOMPSON, ROBINSON, and MARCOTTE, JJ.

**THOMPSON, J.**

Subsequent to his arrest for being a felon in possession of a firearm, but prior to his conviction and sentencing, Travis Adams suffered a major medical event that negatively affected his health and resulted in lifelong complications and limitations. After being convicted and sentenced to a 12-year prison sentence, he now appeals the sentence as being excessive, arguing that he is no longer a threat to society due to his health. The trial court denied his timely motion for reconsideration of his sentence. Finding his criminal record and conduct at the time of commission of the crime to cumulatively outweigh the mitigating considerations of his subsequent health condition at sentencing, we affirm the length of his prison sentence, but vacate and remand for a hearing only insofar as assignment of the $1,000 fine, pursuant to La. C. Cr. P. art. 875.1.

## FACTS AND PROCEDURAL HISTORY

On April 2, 2019, Sergeant Steve McKenna and Corporal Carlos Glass-Bradley, both of the Shreveport Police Department, observed Travis Adams ("Adams") driving without wearing his seatbelt in a Ford Mustang with the windows rolled down, and they conducted a traffic stop. During the stop, the officer retrieved a 9mm Smith & Wesson handgun from the center console of Adams' vehicle. Adams advised Sgt. McKenna that he was a convicted felon, and Sgt. McKenna placed Adams under arrest for felon in possession of a firearm.

A jury trial on this matter was held on June 27, 2023, during which Sgt. McKenna testified he stopped Adams for a seatbelt violation when he saw him driving without a seatbelt through the open window of his vehicle. Lekisha Cook was a passenger in the vehicle and was also not wearing a

seatbelt. Sgt. McKenna testified that after making the stop he smelled marijuana and began a search of Adams' vehicle, during which he found a loaded 9mm Smith & Wesson pistol in the driver's console. Sgt. McKenna advised Adams of his *Miranda* rights. Adams told Sgt. McKenna that he did not have a driver's license because it was suspended. He also told the officer that he was a convicted felon. Sgt. McKenna verified with dispatch that Adams had been convicted of a felony. Adams told Sgt. McKenna that the weapon belonged to him and that he had it for protection because someone was trying to kill him. Sgt. McKenna then arrested Adams for possession of a firearm by a convicted felon.

Cpl. Glass-Bradley testified that he was with Sgt. McKenna during the traffic stop and confirmed Sgt. McKenna's recollection of the facts surrounding the stop, search, and arrest. Cpl. John Madjerick with the Shreveport Police Department testified that he took Adams' fingerprints, compared them to the bill of information in the prior conviction, and confirmed that Adams had been previously convicted of a felony. Cpl. Madjerick confirmed that the bill of information that matched Adams' fingerprints was a guilty plea for aggravated assault on a peace officer with a firearm dated April 26, 2010. He then testified that the charges in the current matter happened less than ten years after the completion of Adams' one-year sentence at hard labor on the original conviction. Finally, Lekisha Cook testified that she and Adams have two children together and had not been smoking marijuana when they were pulled over by the police. She testified that Adams told Sgt. McKenna that he could search the vehicle. Adams elected not to testify at the trial. After deliberation, the jury unanimously found Adams guilty of possession of a firearm by a felon.

2

During the August 1, 2023, sentencing hearing, defense counsel described for the trial court how Adams had suffered a subarachnoid hemorrhage brought on by a ruptured aneurism, which caused him to have seizures, incontinence, diabetes insipidus, hypothyroidism, and central adrenal insufficiency. This medical event occurred the year prior to trial, on July 6, 2021, and Adams was not released from the hospital to return home until November 6, 2021. Two letters from Adams' treating physicians were offered into the record that state Adams needs help with daily life activities. Defense counsel had no other mitigating factors for the court.

The trial court reviewed the Article 894.1 factors, specifically noting it had reviewed all mitigating and aggravating factors. The court noted that Adams has the 2010 conviction for aggravated assault upon a peace officer with a firearm, a 2011 monetary instrument abuse conviction, with probation revoked in 2013, a 2017 felony theft conviction, a 2012 second degree battery arrest, and multiple other misdemeanor arrests over 15 years. Defense counsel argued to the court that due to his health, Adams would no longer be a threat to anyone in society again. The trial court sentenced Adams to 12 years at hard labor without the benefit of probation, parole, or suspension of sentence. The court also imposed the mandatory $1,000 fine, plus court costs. Adams filed a motion to reconsider sentence that was denied by the trial court. This appeal followed.

## DISCUSSION

Adams asserts the following two assignments of error:

**First Assignment of Error: The trial court without a presentence investigation imposed a sentence of 12 years and a fine of $1,000. By the time this matter was resolved, Mr. Adams had significant health problems, but the trial court gave little consideration to the fact he was**

3

**no longer the same person he was when his earlier offenses were committed.**

As to his first assignment of error, Adams argues that his sentence of 12 years at hard labor was excessive because he was not brandishing the weapon and is no longer a threat to society because he had a subarachnoid hemorrhage caused by a ruptured aneurism on July 6, 2021.

An excessive sentence claim is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1 and whether the sentence is constitutionally excessive. *State v. Dowles*, 54483 (La. App. 2 Cir. 5/25/22), 339 So. 3d 749; *State v. Vanhorn*, 52,583 (La. App. 2 Cir. 4/10/19), 268 So. 3d 357, *writ denied*, 19-00745 (La. 11/19/19), 282 So. 3d 1065. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. The trial court is not required to list every aggravating or mitigating circumstance, so long as the record reflects that it adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Croskey*, 53,505 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1151. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, **health**, and employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *Dowles*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *Dowles*, *supra*.

4

The record in the present matter is clear that the trial court adequately considered the guidelines of the article. The court noted the mitigating circumstances cited by Adams and the various aggravating circumstances, including his extensive criminal history. While the trial court may not have given Adams' health the weight as a mitigating factor as he desired, the trial court clearly made a thoughtful review of the aggravating and mitigating factors in arriving at its sentence. We find that this prong of the analysis was satisfied.

Second, the court must determine whether the sentence is constitutionally excessive. *Id.* Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense, or shocking to the sense of justice. A sentence violates La. Const. art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than the purposeless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. *Id.*; *State v. Baker*, 51,933 (La. App. 2 Cir. 4/11/18), 247 So. 3d 990, *writ denied*, 18-0858 (La. 12/3/18), 257 So. 3d 195, and *writ denied*, 18-0833 (La. 12/3/18), 257 So. 3d 196.

The trial court has wide discretion in the imposition of sentences within the statutory limits, and sentences should not be set aside as excessive in the absence of manifest abuse of discretion. *Dowles*, *supra*. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *Id.* Absent specific authority, it is not the role of an appellate

court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence. *Id.*

La. R.S. 14:95.1(B) states that whoever is found guilty of possession of a firearm or carrying concealed weapon by a person convicted of certain felonies shall be imprisoned at hard labor for not less than five nor more than 20 years without the benefit of probation, parole, or suspension of sentence and be fined not less than $1,000 nor more than $5,000. Here, the trial court sentenced Adams to 12 years at hard labor and a fine of $1,000. Of the potential sentence between the mandatory minimum of five years, and the maximum of 20, Adam's 12 year sentence is in the bottom 50% of potential years of incarceration. We cannot say that this midrange sentence shocks the sense of justice, nor is it grossly disproportionate to the severity of the offense. While we recognize that since the commission of this crime Adams has suffered a major medical event, this fact does not negate the seriousness of his offense. Moreover, we must focus on the actions of the defendant that led to his conviction by a jury of this crime and not solely the events that may have taken place while waiting for trial. Additionally, the trial court had the benefit in fashioning its sentence to observe Adams during the trial and to consider the timely filing of a motion to reconsider the sentence for these very health reasons. Acknowledging that health is one of the many factors to be considered in fashioning and reviewing sentences, the record does not support any argument that the trial court failed to consider all relevant factors in arriving at the midrange 12-year sentence. For the above reasons, we find that Adams' sentence is not excessive and his first assignment of error is without merit.

6

**Second Assignment of Error: The trial court erred in denying the motion to reconsider sentence and the sentence should be set aside and this matter remanded for the imposition of a sentence which is not unconstitutionally excessive.**

As to Adams' second assignment of error, he argues that the trial court erred in denying the motion to reconsider sentence without a hearing. This court has frequently held that a trial court may deny a motion to reconsider sentence without a hearing. La. C.C.P. art. 881.1; *State v. Wilson*, 53,913 (La. App. 2 Cir. 5/26/21), 317 So. 3d 923. Adams simply contends that the trial court was in error because it did not have a hearing on the motion to reconsider so that Adams could re-urge his argument regarding his health status. The absence of a hearing does not equate with the trial court failing to give the merits of the motion due consideration. The trial court was presented with an argument that the current health of Adams should be the controlling consideration in fashioning his sentence. The record reflects that the trial court considered all 894.1 factors, and that does not mean it acted in error in deciding the motion without a hearing. After reviewing the record, we find there was no abuse of discretion in the trial court's denial of Adams' motion to reconsider sentence. This assignment of error is likewise without merit.

**ERROR PATENT**

A review of the record indicates that there is an error patent in the current proceedings regarding the trial court's imposition of the $1,000 fine. As noted above, La. R.S. 14:95.1(B) authorizes the imposition of a fine of not less than $1,000 nor more than $5,000 upon conviction of the crime of felon in possession of a firearm. The trial court in the present matter imposed a

7

$1,000 fine on Adams. However, La. C. Cr. P. art. 875.1 states, in pertinent part:

A. The purpose of imposing financial obligations on an offender who is convicted of a criminal offense is to hold the offender accountable for his action, to compensate victims for any actual pecuniary loss or costs incurred in connection with a criminal prosecution, to defray the cost of court operations, and to provide services to offenders and victims. These financial obligations should not create a barrier to the offender's successful rehabilitation and reentry into society. *Financial obligations in excess of what an offender can reasonably pay undermine the primary purpose of the justice system which is to deter criminal behavior and encourage compliance with the law. Financial obligations that cause undue hardship on the offender should be waived, modified, or forgiven.* Creating a payment plan for the offender that is based upon the ability to pay, results in financial obligations that the offender is able to comply with and often results in more money collected. Offenders who are consistent in their payments and in good faith try to fulfill their financial obligations should be rewarded for their efforts.

B. For purposes of this Article, "financial obligations" shall include any fine, fee, cost, restitution, or other monetary obligation authorized by this Code or by the Louisiana Revised Statutes of 1950 and imposed upon the defendant as part of a criminal sentence, incarceration, or as a condition of the defendant's release on probation or parole.

C. (1) Notwithstanding any provision of law to the contrary, *prior to ordering the imposition or enforcement of any financial obligations as defined by this Article, the court shall conduct a hearing to determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents.* The court may consider, among other factors, whether any victim of the crime has incurred a substantial financial hardship as a result of the criminal act or acts and whether the defendant is employed. The court may delay the hearing to determine substantial financial hardship for a period not to exceed ninety days, in order to permit either party to submit relevant evidence.

(2) *The defendant or the court may waive the judicial determination of a substantial financial hardship required by the provisions of this Paragraph. If the court waives the hearing on its own motion, the court shall provide reasons, entered upon the record, for its determination that the defendant is capable of paying the fines, fees, and penalties imposed without causing a substantial financial hardship.*

D. (1) If the court determines that payment in full of the aggregate amount of all financial obligations imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents, the court shall do either of the following:

(a) Waive all or any portion of the financial obligations, except as provided in Paragraph E of this Article.

(b) Order a payment plan that requires the defendant to make a monthly payment to fulfill the financial obligations.

(2)(a) The amount of each monthly payment for the payment plan ordered pursuant to the provisions of Subsubparagraph (1)(b) of this Paragraph shall be determined by the court after considering all relevant factors, including but not limited to the defendant's average gross daily income for an eight-hour work day.

(b) If the court has ordered restitution, half of the defendant's monthly payment shall be distributed toward the defendant's restitution obligation.

(c) Except as provided in Paragraph E of this Article, during any periods of unemployment, homelessness, or other circumstances in which the defendant is unable to make the monthly payment, the court or the defendant's probation and parole officer is authorized to impose a payment alternative, including but not limited to substance abuse treatment, education, job training, or community service.

(3) If, after the initial determination of the defendant's ability to fulfill his financial obligations, the defendant's circumstances and ability to pay his financial obligations change, the state, the defendant, or the defendant's attorney may file a motion with the court to reevaluate the defendant's circumstances and determine, in the same manner as the initial determination, whether a modification of the monthly financial obligation imposed pursuant to this Article is appropriate under the circumstances.

This version of La. C. Cr. P. art. 875.1 became effective on August 1, 2022, and although Adams committed his offense before Article 875.1 took effect, it is a procedural statute that applies to all actions subsequent to its effective date. *State v. Smith*, 53,827 (La. App. 2 Cir. 3/3/21), 315 So. 3d 407.

We find that Adams was entitled to a hearing pursuant to La. C. Cr. P. art. 875.1 prior to the imposition of the $1,000 fine. There is no evidence in the record that he or the trial court waived the determination of financial hardship. Because a hearing was not held, we vacate the $1,000 fine and

9

remand the matter to the trial court for the required hearing. We do not find Adams' prison sentence should be vacated as it is not excessive, as noted above.

## CONCLUSION

Adams' sentence is affirmed, in part, as to his sentence of 12 years at hard labor, and vacated, in part, as to the $1,000 fine imposed without a hearing. We remand this case for a hearing pursuant to La. C. Cr. P. art. 875.1 to determine Adams' ability to pay any assessed fine.

**SENTENCE AFFIRMED, IN PART, AND VACATED, IN PART, CASE REMANDED, WITH INSTRUCTIONS.**